**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OATEY COMPANY,** | : | **Case No. 03-CV-1231** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **IPS CORPORATION,** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

Before the Court are several motions for summary judgment, including *Defendant's Motion for Summary Judgment of Unenforceability and/or Adjudicating as without Controversy that Oatey is Estopped from Presenting Evidence to Swear Behind the LSP Patents* (" Unenforceability MSJ") (Doc. 132).[1] For the reasons articulated below, the Court finds that, prior to resolving these inter-related motions for summary judgment, Defendant IPS Corporation ("IPS") is entitled to depose one of Plaintiff Oatey Company's ("Oatey") attorneys, Donald L. Otto, as described herein.

## I.     BACKGROUND

This is a patent infringement lawsuit involving an invention related to washing machine outlet boxes ("WMOB"). After the Court issued its opinion construing the disputed claim language (Doc. 67, *Markman* Opinion), the parties stipulated to the entry of summary judgment in favor of IPS so that Oatey would have a final, appealable Order. (Doc. 82, Judgment Entry.) Oatey appealed to the Court of Appeals for the Federal Circuit, who vacated this Court's *Markman* Opinion, finding that this Court had misconstrued one aspect of the claims at issue. *Oatey Co. v. IPS Corp.*, 514 F.3d

_____

[1] The following motions for summary judgment are also pending: *Oatey's Motion for Summary Judgment of Infringement* (Doc. 127); *Defendant's Motion for Summary Judgment Based on Invalidity* (Doc. 128); and *Defendant's Motion for Summary Judgment of Noninfringement* (Doc. 129).

1271 (Fed. Cir. 2008).  Upon remand, the Court established a Case Management Plan and the parties conducted discovery and filed the motions for summary judgment that are now pending.

A threshold issue argued in one of the motions for summary judgment – IPS's Unenforceability MSJ (Doc. 132) – is whether IPS is entitled to depose Oatey's counsel, attorney Donald L. Otto, with respect to his knowledge of a patent relevant to IPS's inequitable conduct defense.

### A.    THE LSP LITIGATION

IPS's request to depose Otto is based on his dual roles as prosecution counsel for the patents at issue and litigation counsel in a lawsuit (the "LSP Litigation") between Oatey and LSP Products Group, Inc. ("LSP") in which LSP sued Oatey for patent infringement, alleging that Oatey's U.S. Patent No. 6,148,850 ("'850 Patent") infringed LSP's U.S. Patent No. 6,125,881 ("881 Patent"). The relevant procedural history of the LSP Litigation and the prosecution history of the patents at issue is as follows.

LSP filed the patent application that became the '881 Patent in April of 1999 claiming invention of a "Dual Drain Outlet Box."  Two weeks later, Oatey, through Mr. Otto, filed the application entitled "Washing Machine Outlet Box With Common Tailpiece for Two Drain Outlets" that became the '850 Patent.  LSP received the '881 Patent on October 3, 2000.  On October 17, 2000, LSP filed the LSP Litigation in the Northern District of Texas.  (Doc. 132-7, LSP Litigation Compl.)

Two days later, on October 19, 2000, LSP contacted Oatey directly by letter regarding potential "business opportunities" related to the similarity between the application that became Oatey's '850 Patent and LSP's '881 Patent. (Doc. 132-8, Ltr.: LSP to Oatey.)  On October 25, 2000, Oatey's President responded to the letter from LSP, stating that Oatey's patent was pending and that

it would be "more productive" to discuss "business opportunities" "when we've both reviewed the two patents."  (Doc. 132-9, Ltr.: Oatey to LSP.)

Oatey's '850 Patent issued on November 21, 2000.  The prosecution history of the '850 Patent reveals that Oatey never disclosed LSP's '881 Patent to the patent office, despite the fact that LSP and Oatey had corresponded regarding the potential similarity between the two patents in late October, 2000, *i.e.*, prior to issuance of the '850 Patent.

On January 26, 2001, LSP filed an amended complaint in the LSP Litigation adding an interference claim pursuant to 35 U.S.C. § 291.  Oatey answered the complaint and counterclaimed on March 5, 2001.

Finally, on May 17, 2001, Mr. Otto, outside counsel for Oatey, and attorney Monty Ross, counsel for LSP, met in St. Louis to discuss resolution of the LSP Litigation.  Mr. Otto and Mr. Ross reached an agreement settling the lawsuit.  No one else attended the meeting.  On May 31, 2001 LSP and Oatey filed an "Agreed Motion to Dismiss" the LSP Litigation.  (Doc. 132-12, Agreed Motion to Dismiss.)  The Agreed Motion to Dismiss indicates that:    (1) the parties exchanged, then returned, material documents; (2) the case was settled at the St. Louis meeting; and (3) LSP's interference claim was dismissed without prejudice.  (*Id*.)

It is undisputed that neither Oatey nor Mr. Otto ever informed the United States Patent and Trademark Office ("USPTO") of the LSP Litigation, the interference claim asserted in that litigation, or the settlement of that litigation.

Two years later, in June of 2003, Oatey filed this lawsuit, alleging that IPS had infringed the '850 Patent.  IPS is now asserting  inequitable conduct and invalidity defenses based on the alleged similarity between Oatey's '850 Patent and LSP's '881 Patent and allegations of non-disclosure to the USPTO.

## B.    REQUESTS TO DEPOSE MR. OTTO

During the discovery process, both initially and upon remand, IPS requested the opportunity

to depose Donald L. Otto, Oatey's counsel.  In fact, IPS is presently seeking to depose Mr. Otto with

respect to facts it alleges are pertinent to its argument that Oatey's patent is unenforceable due to

inequitable conduct.  Because the circumstances surrounding IPS's requests to depose Mr. Otto are

relevant to the Unenforceability MSJ, the Court will describe them here.

### 1.    The Case Management Conference

The Court and the parties first discussed the deposition of Mr. Otto at the Case Management

Conference ("CMC") on September 23, 2003.   (Doc. 17, CMC.)  At the CMC, IPS asserted two

grounds for its request to depose Mr. Otto.  First, IPS claimed it was entitled to discover Mr. Otto's

intentions with respect to claim construction during the prosecution of the '850 Patent, *i.e.*, what he

thought the claims meant when he drafted them.  Second, IPS sought to discover the reasons Mr.

Otto proffered a particular amendment to the patent office, although IPS did not explain the

relevance of the amendment or why the prosecution history would not be sufficient to reveal the

purpose of the amendment.  At the CMC, IPS did not mention the LSP litigation in connection with

its request to depose Mr. Otto and did not assert that it believed Oatey had failed to disclose material

information to the USPTO during the prosecution of the '850 Patent.  Oatey strenuously opposed

these requests, pointing out that Mr. Otto's personal view of the claims was irrelevant to this Court's

claim construction and that the reasons for the amendment at issue, if relevant, could be gleaned

from the prosecution history of the '850 Patent.  Oatey asserted that Mr. Otto was an important

member of their trial team in this action and that inquiry of trial counsel should not be allowed

absent a compelling need therefore.

After considering the parties' positions, the Court denied IPS's request to depose Mr. Otto,

-4-

explaining "that it would not authorize the taking of litigation counsel's [*i.e.*, Mr. Otto's] deposition absent a showing of both the relevance and need therefor."  (Doc. 35 at 1, Order Denying Request to Depose Mr. Otto.)

### 2.    Letter Request to Depose Mr. Otto

Approximately three months after the CMC, on January 27, 2004, the Court received a letter from IPS renewing its request for an order requiring Oatey to produce Mr. Otto for deposition and articulating the grounds for the request.  (*See* Doc. 35-2, Ltr.: IPS to Court.)  For the first time, IPS mentioned the LSP litigation as one of several reasons to depose Mr. Otto.  It did not, however, explain why Mr. Otto's involvement in the LSP Litigation was relevant to the inequitable conduct defense now at issue in this case.  Indeed, it did not even mention the issue of inequitable conduct. The Court summarized the content of IPS's letter at the Oral Argument on the pending motions for summary judgment as follows:

> So then you followed up with a letter to me in which you mentioned for the first time [the] LSP litigation, but you did not mention any issue of potential inequitable conduct.  You simply said you wanted to know . . . whether or not he asserted or contemplated any legal theories in that case that might be inconsistent with the legal theories he was contemplating relying on in this case, particularly . . . as it relates to claim construction.  And then you did, in fairness, mention this . . . closed door meeting as it relates to the settlement, but did not explain why that would be meaningful.

(Doc. 153, Oral Arg. Tr. at 13.)  The Court further noted that, even after IPS crystallized its position on its inequitable conduct claim, it never explained that Mr. Otto's testimony was material to that defense.

> [O]nce it became clear that you were going to assert inequitable conduct, and that you were going to assert it based on . . . this 'invitation to dance' letter that came from LSP, once you understood that that was the reason that you needed to understand what Mr. Otto's participation and level of knowledge was, why didn't you come back to the Court at that point in time?

(*Id*. at 13-14.)  Thus, even after receiving the letter from IPS, the Court was not aware of the connection between Mr. Otto's testimony and IPS's inequitable conduct defense.

Consequently, on February 11, 2004, the Court issued an Order denying IPS's request to depose Mr. Otto on the grounds "that the testimony IPS seeks from Mr. Mr. Otto is irrelevant to the questions presented in this action."  (Doc. 35 at 2.)

### 3.  June, 2008 Subpoena of Renner, Otto

On June 25, 2008, IPS served Renner, Otto with a subpoena for the purposes of, *inter alia*, deposing Oatey's attorneys, Jay Campbell and Donald Otto.[2]  (Doc. 93, Subpoena Upon Renner, Otto.)  The subpoena requested all documents related to the LSP Litigation, particularly documents referred to the in the Agreed Motion to Dismiss and exchanged at the May 17, 2001 meeting in St. Louis that led to the settlement (the "St. Louis Meeting").

Oatey filed a motion to quash the subpoena on July 9, 2008, (Doc. 95, Motion to Quash Subpoena), specifically noting that the Court had refused to permit the deposition of Mr. Otto on two prior occasions – first, at the CMC, and, second, in denying ISP's letter request to depose Mr. Otto (Doc. 35).

### 4.  The Stipulation Regarding the Mr. Otto Deposition

Before the Court could rule on the motion to quash (Doc. 95), IPS filed a notice of withdrawal of its subpoena on August 21, 2008 (Doc. 103, Notice of Withdrawal of Subpoena). The notice states that IPS was withdrawing the subpoena "[p]ursuant to a stipulation with Plaintiff Oatey Co."  (*Id*.)  The stipulation to which the notice refers ("The Stipulation") is an email thread dated August 21-22, 2008 and attached to the Enforceability MSJ as an exhibit (Doc. 134-16, Pl's Ex. N).

---

[2] Almost four years passed between the letter to the Court regarding the Otto deposition and the subpoena because of the claim construction process and subsequent appeal and remand.

The Stipulation provides as follows:

> In exchange for IPS's agreement that it will withdraw the subpoena of Renner Mr. Otto (including Don Otto and Jay Campbell), and that it will not attempt to further obtain such testimony either through deposition or at trial, Oatey will agree to the following:
>
> 1.     Don Otto went to the St. Louis meeting as counsel for Oatey and no other representative of Oatey was present at that meeting;
>
> 2.     Don Otto and/or Renner, Otto had sole access and copies of documents provided by LSP during the St. Louis meeting; that Mr. Otto and Renner, Otto returned all documents received from LSP as a result of the St. Louis meeting; and that Oatey, Don Otto, and Renner, Otto have no way of producing the documents received from LSP as a result of the St. Louis meeting;
>
> 3.     Oatey and LSP resolved the LSP litigation;
>
> 4.     The Notice of Dismissal did not require LSP or Oatey to abandon any patents, continuations of patents, or divisionals; and
>
> 5.     The claims and counterclaims from the LSP litigation were dismissed as stated in the notice of dismissal.

(Doc. 134-16 at 1-2.)  Nothing in The Stipulation addressed whether Mr. Otto was aware of LSP's '881 Patent, the October 17, 2000 action against Oatey, the October 19, 2000 letter to Oatey, or Oatey's October 25, 2000 response thereto at any point prior to the meeting between LSP and Oatey in St. Louis.

### 5.     IPS's Argument in the Unenforceability MSJ

Now, as part of its Unenforceability MSJ, IPS is arguing that Mr. Otto's knowledge of, and familiarity with, LSP's '881 Patent prior to the issuance of Oatey's '850 Patent and during the settlement of the LSP Litigation is critical to IPS's contention that Oatey engaged in inequitable conduct. Specifically, IPS argues that Oatey engaged in inequitable conduct when it failed to disclose the '881 Patent to the USPTO, (Doc. 132 at 9-14), and when it agreed to stipulated

dismissal of LSP's interference claim without prejudice in the LSP Litigation, (*id*. at 14-18). IPS now seeks to depose Mr. Otto to "determine what was known, when it was known, and why the '881 Patent was not disclosed to the USPTO." (*Id*. at 6.) In addition, IPS notes that "the only [person] who could enlighten us as to what occurred at the meeting whereby LSP and Oatey reached a resolution of the *LSP v. Oatey* case would be Mr. Donald Otto." (*Id*. at 7 (citing Doc. 132-13, Dep. Niles P. Rogers 24-25).)

## II.    DISCUSSION

IPS's renewed request to depose Mr. Otto implicates both the propriety of deposing opposing counsel and the elements of inequitable conduct. The issue is whether Mr. Otto's testimony is (1) appropriate on the issue of inequitable conduct given his dual role as prosecution and trial counsel and (2) relevant to IPS's inequitable conduct defense to a degree that outweighs IPS's failure to request his deposition in a timely and effective manner.

### A.    DEPOSITION OF OPPOSING COUNSEL

Although the parties do not dispute that it would be inappropriate to depose trial counsel on certain issues related to his role as patent litigator, it is not uncommon in patent cases to depose the attorney who prosecuted the patent on issues related to prosecution history. *See Leviton Mfg. Co. Inc. v. Shanghain Meihao Elec., Inc.*, – F. Supp. 2d –, 2009 WL 1308376, at *39-40 (D. Md. May 12, 2009) (analyzing this issue in detail, collecting cases, and concluding that "courts regularly permit the depositions of patent prosecution counsel, finding the information sought relevant and the inquiry proper when a party raises the defense of inequitable conduct); *cf. In re Seagate Tech., LLC*, 497 F.3d 1360, 1374-75 (Fed. Cir. 2007) (discussing the distinctions between waiver of attorney-client privilege with respect to opinion counsel and trial counsel in the context of the advice of counsel defense); *but cf. In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir.

-8-

2000) (holding that attorney's communications with inventor regarding invention record and prior art are privileged).

In this case, Oatey represented to the Court early in the litigation that Mr. Otto – the attorney who prosecuted the '850 Patent – would also be acting as trial counsel in this case. As a result the Court was not predisposed to allowing IPS to depose him, especially given that, at that time, IPS did not seek to depose him with respect to its inequitable conduct defense.  Despite counsel's contention at Oral Argument that Mr. Otto "write[s] the briefs" and has had "a very active role" in the case (Oral Arg. Tr. 19), however, to date, Mr. Otto has not made an appearance in Court, has not signed a brief, and has not interacted with the Court in any way, shape or form. Of course, it is impossible for the Court to know which attorneys are doing work behind the scenes, but Oatey has given the Court no reason to believe that Mr. Otto (who is a senior and experienced litigator not likely to be serving roles normally reserved to associates) is acting as trial counsel beyond its unsupported assertions at the Oral Argument.

In the abstract, if Oatey wanted to avoid testimony by Mr. Otto regarding prosecution history, designating him as trial counsel might appear to be an effective tactic. Under these circumstances, the Court takes note of one court's unequivocal repudiation of this tactic: "Courts that have addressed this issue have made it abundantly clear: patent prosecution counsel cannot escape deposition merely because they currently serve as trial counsel in subsequent litigation." *Leviton Mfg. Co.*, 2009 WL 1308376 at \*40; *see also id.* (quoting David Hricik, *How Things Snowball: The Ethical Responsibilities and Liability Risks Arising from Representing a Single Client in Multiple Patent-Related Representations* 18 Geo. J. Legal Ethics 421, 460 (Spring 2005), stating: "Where trial counsel prosecute the patent-in-suit and inequitable conduct is pled, courts have almost without exception held that the prosecuting attorney must be made available for deposition, even

-9-

though he is also trial counsel."); *cf. In re Seagate*, 497 F.3d at 1374-75 (advising district courts to "exercise . . . discretion in unique circumstances to extend waiver of attorney-client privilege to trial counsel, such as if a party or counsel engages in chicanery.").

The Court finds this authority persuasive.  Accordingly, even if Mr. Otto is acting as both prosecution and trial counsel, it would be appropriate for IPS to depose him on the issue of inequitable conduct, to the extent his testimony is relevant.

### B.    RELEVANCE

Oatey <u>correctly</u> asserts that IPS has been delinquent in seeking Mr. Otto's deposition on the issue of inequitable conduct.  The Court could well conclude that IPS's failure to articulate these grounds for deposing Mr. Otto at an earlier stage in these proceedings justifies a denial of its request. Having been rebuffed by the Court twice before in its effort to depose Mr. Otto, however, it is possible that IPS was hesitant to return, even once the premise for its request had morphed into its current form.  The Court, moreover, generally prefers to resolve disputes on the merits, and, given that unenforceability based on inequitable conduct is a threshold issue in this case, *see Baxter v. Int'l Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("[I]nequitable conduct with respect to one claim renders the entire patent unenforceable."),  evidence relevant to that issue could assist the Court in resolving the case in the most efficient manner.  The question, therefore, is whether Mr. Otto's testimony is relevant to IPS's inequitable conduct defense.

A patentee has a duty of candor, good faith, and honesty in its dealings with the USPTO. *See Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1342 (Fed. Cir. 2005).  Breach of this duty constitutes inequitable conduct.  *Id.*  The Federal Circuit recently defined inequitable conduct as "failure to disclose [to the PTO] material information, or submission of false material information, with intent to deceive . . . ." *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1353

-10-

(Fed. Cir. 2008).  IPS must prove these two elements – materiality and intent – by clear and convincing evidence.  *Id*.  "The more material the conduct, the less evidence of intent will be required in order to find that inequitable conduct has occurred."  *PerSeptive Bio Sys., Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000).

IPS's inequitable conduct defense rests on two arguments.

### 1.     Intentional Failure to Disclose Material Information

First, IPS contends that Oatey intentionally failed to disclose LSP's '881 Patent to the USPTO prior to the issuance of its '850 Patent.  This nondisclosure occurred despite the company's alleged knowledge of the existence of the '881 Patent and its similarity to their invention based on the October 19, 2000 letter from LSP to Oatey.  As Oatey's retained outside counsel with respect to prosecution of the application for the '850 Patent, IPS argues that the timing and extent of Mr. Otto's knowledge of the '881 Patent is relevant to this inequitable conduct argument.  IPS asserts that Mr. Otto's testimony could inform the analysis of whether Oatey knew that the '881 Patent was material information within the scope of its duty of disclosure to the USPTO, and, if so, whether Oatey intended to deceive the USPTO by failing to disclose the existence of the '881 Patent.

Oatey argues that Mr. Otto's testimony on this issue is unnecessary because Oatey executives have already testified with respect to this issue and have denied any such intention.  In addition, Oatey maintains that IPS waived its opportunity to depose Mr. Otto by entering into The Stipulation resolving Oatey's Motion to Quash.  (Doc. 134-16 at 1-2.)

The Court finds that the potential value of Mr. Otto's testimony on this issue outweighs the possibility that it will be duplicative of evidence IPS already had the opportunity to gather from Oatey's executives.  As the Court noted at the Oral Argument, the primary Oatey executive on whose testimony Oatey now relies actually testified that he did not recall whether he had provided

-11-

Mr. Otto with the October 19 letter from LSP informing Oatey of the similarity between the '881 Patent and Oatey's application for the '850 Patent. With this in mind, Mr. Otto's testimony is important to the issue of what was known and when it was known with respect to the October 19 letter prior to issuance of the '850 Patent. For example, it could clarify whether Oatey's patent counsel – expert at determining whether information is material to a patent application – was aware of the '881 Patent during the time the application for Oatey's '850 Patent was pending.[3]

As noted above, moreover, The Stipulation does not address this issue. Indeed, it is narrowly tailored to certain facts related to the St. Louis meeting between Mr. Otto and LSP that led to the Agreed Order of Dismissal of the LSP Litigation. (Doc. 134-16 at 1-2.) As Oatey notes, The Stipulation arose out of the subpoena, and the subpoena did not seek information regarding Mr. Otto's knowledge of the letter from LSP in October of 2000 or of his decision, if any, regarding the materiality of LSP's assertions *vis-a-vis* its own patent or the '850 Patent.[4] Therefore, testimony on this issue is not within the scope of the waiver IPS negotiated via The Stipulation.

### 2.    "Swearing Behind" the '881 Patent

IPS's second inequitable conduct argument is more unusual and complex than its first. In sum, IPS argues that Oatey engaged in inequitable conduct by deliberately choosing not to resolve the interference claim in the LSP Litigation. As a result of this allegedly calculated choice not to resolve the interference, Oatey is now able to argue that the '881 Patent is not prior art because

---

[3] Because it does not need to do so here, the Court does not address IPS's alternative argument that Oatey had a duty to disclose LSP's interference claim even after the '850 Patent issued.

[4] At Oral Argument, Oatey's counsel stated: "the subpoena had nothing to do with the letter. The subpoena was only about the LSP Litigation." (Oral Arg. Tr. 23.)

-12-

Oatey can "swear behind"[5] the '881 Patent without actually litigating that issue with the real party in interest, LSP.  Furthermore, IPS argues that Oatey's agreement not to resolve the interference claim potentially subjects IPS to liability to both Oatey and LSP, "double jeopardy" in the descriptive sense (as opposed to the constitutional sense).  Both parties assert that this is a novel legal argument – Oatey argues that it is "novel" because IPS's theory lacks any foundation in law; IPS argues that it is "novel" because there is no case law supporting Oatey's contention that it can "swear behind" an interfering patent.

At this stage in the litigation, the Court need not address this "novel" issue, except to note that the unusual procedural posture of this case with respect to the question of interference and the dearth of authority for both parties' legal argument suggests that the issue calls for careful analysis. With this in mind, the Court finds that more information regarding the settlement of the LSP Litigation dismissing the interference claim without prejudice could assist the Court in reaching a fair and correct resolution.  Consequently, the Court will permit IPS to depose Mr. Otto with respect to prosecution of the '850 Patent and settlement of the LSP Litigation.

## III.  CONCLUSION

For the foregoing reasons, IPS may depose Donald L. Otto with respect to prosecution of the '850 Patent and settlement of the LSP Litigation within twenty-one (21) days of the date of this Order. Further, within thirty (30) days of the date of this Order, IPS may file a supplemental brief on the issue of inequitable conduct.  Oatey shall have ten (10) days from the date IPS files the

---

[5] "Swearing behind" a prior art reference refers to a patent applicant's effort to demonstrate that it reduced the invention for which it is seeking a patent to practice prior to the filing date of the prior art. *See* 35 U.S.C. § 102.  Here, Oatey is seeking to "swear behind" LSP's '881 Patent; it contends that it reduced its invention (*i.e.*, the '850 Patent) to practice prior to the date LSP filed the application that led to the '881 Patent.

-13-

supplemental brief to file a response.  The Court does not anticipate entertaining replies.


      **IT IS SO ORDERED.**

                                        **s/Kathleen M. O'Malley**
                                        **KATHLEEN McDONALD O'MALLEY**
                                        **UNITED STATES DISTRICT JUDGE**


**Dated: June 5, 2009**